UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK  KEATON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVE  HANNUM, | ) | |
| LESLIE  SLONE, | ) | No. 1:12-cv-00641-SEB-MJD |
| CHRISTINE  ZOOK, | ) | |
| REBA  GARDNER, | ) | |
| JACKIE  DAKICH, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL [DKT. 78]**

On January 28, 2013, Plaintiff Mark Keaton filed a Motion to Compel related to Defendant Christine Zook's responses to his Requests for Production of Documents [Dkt. 78]. Defendant Zook responded on February 12, 2013 [Dkt. 92].  The motion was heard on March 5, 2013.  The parties filed supplemental briefing after the hearing, which have been considered by the Court.  [Dkts. 105, 112, 119, 120.]  Additionally, the Indiana Disciplinary Commission has filed a brief setting forth its position with respect to communications it had with Zook and her counsel.  [Dkts. 114, 116.]  For the following reasons, the Court GRANTS IN PART and DENIES IN PART, Plaintiff's Motion to Compel.

I.      **Background.**

Plaintiff's Motion to Compel focuses on four categories of documents that Keaton contends Zook has an obligation to produce and yet has failed produce.

First, Keaton contends that Zook has failed to produce all correspondence between Zook and Keaton.  Zook produced a file called "Victim.pst", containing emails between Keaton and Zook.  Zook also produced between 374 and 500 emails between her and Keaton in .pdf format and not .pst format.  Keaton suspects that not all of the email correspondence has been produced and thus, seeks to review Zook's email in native format.

Second, Keaton seeks correspondence between Zook and her lawyers on the one hand, and the Indiana Disciplinary Commission on the other.  Keaton contends that these documents were requested in correspondence between Zook and anyone else regarding Keaton and have not been produced.

Third, Keaton seeks disclosure of the names of Zook's mental health providers and documents related thereto.  Keaton argues that these documents are relevant to Zook's accusations that Keaton stalked her.[1]

Fourth, Keaton seeks the production of several of Zook's emails in a different format – both in a native format as well as in a non-nested format.

## II.   Discussion.

### A.      Correspondence Between Keaton and Zook (RFP No. 1)

In response to Keaton's request that Zook produce all correspondence between Zook and Keaton, Zook produced a disk containing a folder labeled "Victim.pst."  That file contains approximately 7,200 emails between Keaton and Zook.  The Victim.pst file was created in August 2010 during the underlying criminal case in which Keaton was accused of stalking Zook.  After reviewing Victim.pst, Keaton discovered that several emails were missing, including

---

[1] Keaton also argued that he is entitled to a production of any documents withheld by Zook on the grounds of privilege that were not logged on a privilege log in accordance with Fed. R. Civ. P. 26(b)(5).  [Dkt. 79 at 23-24.]  Because this issue in intertwined with several of Keaton's other arguments regarding Zook's production, the Court will address this argument within each separate category to which the argument applies.

February, 2009 emails from Keaton to Zook regarding Zook's allegation that Keaton hired a private investigator to follow her (referred to by the parties as the "Hook emails") and 2009 emails to Keaton from an email account titled "Clubhouse Informant". Zook has subsequently produced the Hook emails, approximately 500 .pdf files to Keaton containing additional correspondence, and the Clubhouse Informant emails. Keaton remains unconvinced that Zook has produced all of the correspondence between Zook and Keaton, and thus, seeks Zook's email archives in a native format.

Zook has argued that she cannot produce her Gmail files in a .pst format because no native format exists for Gmail (i.e., Google) email accounts. The Court finds this to be incorrect based on Exhibit 2 provided by Zook in her Opposition Brief. [Dkt. 92 at Ex. 2 (Ball, Craig: *Latin: To Bring With You Under Penalty of Punishment*, EDD Update (Apr. 17, 2010)).] Exhibit 2 explains that, although Gmail does not support a "Save As" feature to generate a single message format or PST, the messages can be downloaded to Outlook and saved as .eml or.msg files, or, as the author did, generate a PDF Portfolio – "a collection of multiple files in varying format that are housed in a single, viewable and searchable container." [*Id.*] In fact, Zook has already compiled most of her archived Gmail emails between her and Keaton in a .pst format when Victim.pst was created. It is not impossible to create a "native" file for Gmail emails.

Although Zook could repeat the exercise conducted to create the Victim.pst file, the Court finds this would be an unnecessary waste of resources when 7,000 emails have been produced in a .pst file and only approximately 500 have been produced in a .pdf format (approximately 400 of which are on Victim.pst in a forwarded form). The Court finds that it would not be unduly burdensome for Keaton to review 500 emails in a .pdf format. The Court

DENIES Keaton's request that Zook's archived emails be reproduced in a .pst format or a different native format.

Zook's counsel represents that Zook has now produced all documents responsive to Plaintiff's request for production of documents.  However, the Court finds it troublesome that Zook's production of correspondence between her and Keaton has been piecemeal and incomplete, as well as the fact that Zook has withheld requested documents without providing a privilege log as required by Fed. R. Civ. P. 26(b)(5).  Consequently, the Court ORDERS Zook to submit a certification with the Court under the caption for this case and signed by Christine Zook, personally, in the following format:  "The undersigned hereby certifies, pursuant to the penalties for perjury, that I have produced to Plaintiff in this matter all documents and things in my custody or control that are responsive to Plaintiff's First Set of Requests for Production of Documents."  Zook shall submit the foregoing certification within fourteen (14) days of the date of this Order.

### B. Correspondence Between Zook and Others Regarding Keaton.

Keaton requested that Zook produce all "correspondence between you and anyone relating in any way to plaintiff . . . ."  [Dkt. 79 at Ex. D (RFP. No. 5).]  Zook's original response to Keaton's Request for Production of Documents No. 5 included no objections.  [*Id*.][2]

During the course of discovery in a concurrent state court case, Keaton learned that Zook and her lawyers have been corresponding with lawyers David Hughes and Alison Avery from the Indiana Disciplinary Commission.  The Indiana Disciplinary Commission filed a complaint

---

[2] As Keaton noted in his supplemental response at Docket 119, Zook did not make any objection to Request for Production No. 5 in her original response.  As a result, Zook waived her objections that RFP No. 5 sought work product, attorney-client privileged communications, or irrelevant material that existed at the time of her response (i.e., documents 1-5 on her privilege log).  *Equity Indus. A-Rockville LLC v. 7900 Rockville, LLC*, 1:09-cv-0621-SEB-JMS, 2010 WL 1737915, at *1 (S.D. Ind. Apr. 27, 2010) (holding that objections not timely made to document requests are waived pursuant to federal case law).

against Keaton related to the charges that Keaton stalked Zook.  Keaton seeks production of the correspondence between Zook and/or her lawyers and the Disciplinary Commission.  Keaton's request at issue seeks only documents in the possession of Zook and/or her lawyers related to communications with the Indiana Disciplinary Commission and not documents in the Disciplinary Commission's files that were not shared with Zook and/or her counsel.

Zook, on the other hand, argues that her communications with the Disciplinary Commission are protected from disclosure by the work product doctrine, attorney-client privilege, and the common interest doctrine.[3]  Zook argues that she and the Disciplinary Commission

> share a "common interest" in that Zook has been sued by Keaton under the instant Complaint (First Amend. Compl., Dkt. 7) contending she conspired with officers Hannum and Slone of the Indiana University Police Department to falsely arrest Keaton by alleging Keaton stalked Zook.  Keaton alleges that Zook lied to Hannum and that Hannum lied in the probable cause affidavit.  Zook's defense in this conspiracy case rests partially upon the accuracy of the facts as she alleged them to officer Hannum and on Hannum's accurate recitation of these facts in the probable cause affidavit.  Similarly, the IDC Complaint against Keaton is partially based on the same set of facts set forth in Hannum's affidavit.

[Dkt. 112 at 2.] Zook goes further to state that "Given Zook's and the IDC's common interest in proving the same set of facts (that Keaton harassed, intimidated, and staled Zook), they share a common legal interest."  [*Id.* at 3.]  Zook has produced her correspondence with the Disciplinary Commission to the Court for an *in camera* review.

The Court invited the Indiana Disciplinary Commission to provide its position related to the production of communications between Zook and/or her lawyers and lawyers at the Indiana

---

[3] Zook mentions in her supplemental filing after the hearing [Dkt. 112] that the documents at issue are "not discoverable because it is not relevant to any party's claim or defense in this § 1983 action and thus outside the scope of discovery." [Dkt. 112 at 3.]  Yet, Zook did not include relevancy as an objection on her privilege log [*see* Dkt. 106] and Zook failed to explain this objection.  Thus it was waived.  *Bartlett v. State Farm Mut. Auto. Ins.*, 206 F.R.D. 623, 628 (S.D. Ind. 2002).  Even so, the Court finds it inconsistent that Zook would argue that these documents are both **irrelevant** and protected by the **work product doctrine** because they were created in anticipation of litigation with Keaton.  To the extent that Zook has lodged a timely and complete relevancy objection, it is overruled.

Disciplinary Commission.   On March 19, 2013, the Indiana Supreme Court Disciplinary Commission filed a Response to Keaton's Motion to Compel.  [Dkt. 114.]  The Disciplinary Commission received Zook's privilege log prior to making its filing with the Court.  [*Id.* at ¶ 2 ("In this regard, the Commission has received a five (5) page log of such communications from counsel for Jane Doe that the Commission believes was tendered to the Magistrate and served upon Keaton.").]  In its response, the Disciplinary Commission makes two arguments with respect to the documents requested and their privileged or confidential status.  First, the Disciplinary Commission argues that its investigation is "confidential and not open to the public" pursuant to subsection 22 of Indiana Admission and Discipline Rule 23.  [*Id.* at ¶ 3.]  Second, the Disciplinary Commission argues that if Keaton were to obtain the requested information, Keaton could "monitor, practically in real time, the Commission attorneys' past, present, and future activities insofar as the same involved communications with Jane Doe and/or her attorneys."  [*Id.* at ¶ 9.]  The Disciplinary Commission argues that it would be unfair to allow Keaton to monitor the Commission's activities simply because a civil lawsuit exists.  [*Id.*][4]

     **1.**       **Zook's Privilege Log.**

On March 12, 2013, consistent with the Court's order, Zook submitted a privilege log logging the documents she has withheld from production.  [Dkt. 106.]  Zook also provided the withheld documents to the Court *in camera*.

---

[4] The Disciplinary Commission also argues that it "believes that Keaton is seeking communications of the Disciplinary Commission that represent the work product of its staff attorneys."  [Dkt. 114 at ¶ 5.]  The Disciplinary Commission's "belief" that the documents listed on Zook's privilege log "represent the work product of its staff attorneys" is not an objection to the production of those documents on the basis of the work product doctrine.  The Disciplinary Commission has failed to make a document-by-document objection or identify to which documents its objection relates.  Because the Disciplinary Commission has not made a document-by-document objection, despite the Court's invitation for it to assert its position, the Court finds that this perfunctory and undeveloped argument, unsupported by authority has been waived.  *Bartlett*, 206 F.R.D. at 628 ("The party asserting the work-product doctrine must establish all of its elements on a document-by-document basis.") (citation omitted); *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)).

The Court notes that Zook's privilege log reveals that she is withholding several documents for which she is not making any privilege objection.  For example, Zook has refused to produce documents 4-13, 18-28, 31, 33-35,[5] 44-46, 52-53, and 55-61 solely on the basis that "IDC [Indiana Disciplinary Commission] may have objections and has not waived them."  [Dkt. 106.]  The Court is unaware of any basis for Zook to refuse to produce documents in **her** possession because a non-party to this case **may** have an objection to their production, but that party has not intervened or sought a protective order to prevent their disclosure – certainly, Zook has not provided the Court with any authority to support such an argument.  The Seventh Circuit has repeatedly held that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."  *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)); *see also J.A.D. ex rel. Depp v. Astrue*, No. 1:11-cv-01518-TWP-TAB, 2013 WL 1183146 at *6 (S.D. Ind. Mar. 21, 2013) (citing *Poston v. Astrue,* No, 1:08-cv1543-JMS-LJM, 2010 WL 987734, at *8 (S.D. Ind. Mar. 15, 2010) ("This method of argumentation is not argumentation at all . . . .  The Court cannot and will not forge new arguments for [the Claimant]."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) (finding that undeveloped and perfunctory arguments are waived)).  Because Zook has made no valid objection to the production of documents 4-13, 18-28, 31, 33-35, 44-46, 52-53, and 55-61 on her privilege log, the Court finds that these documents should be produced.

Zook makes the following objection to the production of document 36:  "Objection to providing Zook's DOB.  IDC may have some objections and has not waived them."  [Dkt. 106.]

---

[5] With respect to document 32, Zook indicates that this correspondence was "mistakenly addressed to [counsel for Zook" and was instead intended to be an intra-office communication by attorney Hughes from the Disciplinary Commission.  [Dkt. 106.]  Yet, counsel for Zook still had the communication in his possession and the Disciplinary Commission has made no objection to the production of document 32 that it was inadvertently provided to Zook's counsel.

As the Court has already found, an objection that a third party **may** have an objection is no objection at all.  With respect to objecting to producing Zook's date of birth (or "DOB"), the Court is similarly unaware of any basis to withhold an entire document because it contains Zook's date of birth.  Certainly, Zook has cited no authority and has made no argument to the Court that this document is privileged or otherwise protected from disclosure, and therefore has waived any objection to producing document 36.  *See Hess*, 668 F.3d at 455.  The Court finds that document 36 should be produced because no valid objection to its production has been made.

Zook also includes several documents on her privilege log that have already been produced in this case.  [*See* Dkt. 106 at documents 1-2, 17, and 37-42).]  After considering the documents for which Zook's sole objection is that the Disciplinary Commission **may** have an objection, document 36 (withheld because it contains Zook's date of birth), and documents previously produced, the only documents on Zook's privilege log at issue are:  3, the attachment to document 6, 14, 15, 16, 29, 30, 32, 43, 47-51, 54 (although the attachments to document 54 have all been produced in this case), and 62-64 (collectively referred to hereinafter as the "Objected-to Documents").

## 2.    The Attorney-Client Privilege.

Zook claims that each of the Objected-to Documents is protected from disclosure by both the attorney-client privilege and the work product doctrine.   "The attorney-client privilege protects confidential communications made by a client to his lawyer where legal advice is sought from a professional legal advisor in his capacity as such."  *Long v. Anderson Univ.*, 204 F.R.D. 129, 133 (S.D. Ind. 2001) (citing *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)).   Yet, Zook has not claimed that she was represented by the attorneys from the

Disciplinary Commission or established how the Objected-to Documents could be protected from disclosure by the attorney-client privilege.

Indeed, when reviewing the documents *in camera*, the Court notes that many of the documents are not communications between a client and her lawyer.  For example, document 3 is Zook's attorney's notes from a meeting in which Zook communicated with the attorneys from the Disciplinary Commission.  Likewise, document 14 is an email from David Hughes at the Disciplinary Commission to counsel for Zook requesting that he communicate with Zook about her employment in Marion County.  This too is not a communication between a client and her lawyer.

Although portions of document 29, an email from Zook to her lawyer, may have been protected by the attorney-client privilege at one time, that is not the case where Zook's lawyer provided the communication to Hughes.  "The attorney-client privilege shields only those communications by a client to an attorney that were intended to be confidential. Thus as a general matter, the attorney-client privilege will not shield from disclosure statements made by a client to his or her attorney in the presence of a third party who is not an agent of either the client or attorney."  *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997) (citing 8 Wigmore, Evidence § 2311 ("One of the circumstances by which it is commonly apparent that the communication is not confidential is the *presence of a third person* who is not the agent of either client or attorney."); *In re Walsh,* 623 F.2d 489, 495 (7th Cir. 1980) (attorney required to testify about meetings with client at which third parties were present), certiorari denied, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291).  "As Wigmore explains, the presence of such a third party defeats the privilege even though the client may harbor a desire for confidentiality because the privilege 'goes no further than is necessary to secure the client's subjective freedom of

consultation . . . .   The *presence of a third person* (other than the agent of either) is obviously unnecessary for communications to the attorney as such.'"   *Id.* (citing 8 Wigmore, Evidence § 2311).   Because Zook's email to her lawyer was shared with counsel for the Disciplinary Commission, any attorney-client privilege objection has been waived.

The Court finds no basis for Zook's attorney-client privilege objection to the Objected-to Documents and thus overrules that objection.

### 3.      The Work Product Doctrine.

The work product doctrine provides qualified immunity for materials prepared in anticipation of litigation by a party, an attorney, or other representative of the party.   The work product doctrine is a product of the Supreme Court decision *Hickman v. Taylor*, 329 U.S. 495 (1947) that was later codified in Federal Rule of Civil Procedure 26.   That rule provides:

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).   But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) Protection Against Disclosure. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

After an *in camera* review of Zook's correspondence with the Disciplinary Commission, the Court cannot find that these communications were done in anticipation of Zook's litigation against Keaton.   "To establish work product protection, a party must show the primary

motivating purpose behind the creation of a document was to aid in possible future litigation." *Grochocinski v. Mayer Brown Row & Maw LLP*, 251 F.R.D. 316 (N.D. Ill. 2008); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976-77 (7th Cir. 1996) (holding that the work product privilege applies where "a party demonstrates that materials in its possession that would otherwise be discoverable were prepared in anticipation of litigation" and to determine the applicability of the privilege, courts must examine whether the "document can fairly be said to have been prepared or obtained *because* of the prospect of litigation."). Zook's communications with the Disciplinary Commission did not aid in Zook's defense of Keaton's claims against her.

Looking at document 3, which are notes that Zook's lawyer took during a meeting with Zook and the Disciplinary Commission, these notes might have been taken to aid Zook's cooperation in the investigation of the grievance against Keaton, but these notes were not made to aid in Zook's defense of Keaton's claims against her. The same is true for document 15, an email from Zook's counsel to Hughes providing the information requested for the Disciplinary Commission's grievance against Keaton;[6] document 29, email correspondence between Ferguson and Hughes providing Hughes information to further the **Disciplinary Commission's** action against Keaton; and documents 30 and 32 (providing documentation to respond to Keaton's lawyer's letter in the Disciplinary Commission matter).

Document 43 is not work product because it is a discussion regarding the scheduling and re-scheduling of Zook's deposition. Certainly, document 43 does not evidence "collaborative thoughts regarding the defense of the case" as Zook contends on her privilege log because the document is simply an email from Ferguson to Hughes informing him of the cancellation of Zook's deposition and Keaton's potential motivation for cancelling.

---

[6] The same is true for document 16 in which Hughes thanks Ferguson for sending the requested information.

Zook likewise cannot claim work product for documents that were created by the Disciplinary Commission. For example, document DLF_01_A1, which was attached to document 6, is a letter from the Disciplinary Commission to counsel for Zook asking for information related to the grievance and Keaton's response thereto. This document cannot be Zook's counsel's work product as it was not generated by her counsel in anticipation of the litigation by Keaton against her. The same is true for document 14 (an email from Hughes to Ferguson requesting information); documents 47-48 (an email from Hughes informing Ferguson about the filing of the Verified Complaint under seal against Keaton and Ferguson's thank you response); documents 49-51 (correspondence between Hughes and Ferguson regarding Zook's deposition)

Document 54 is not work product where Ferguson simply forwarded Keaton's motion to compel to Hughes. Neither is document 64 work product where Ferguson simply forwarded Hughes Zook's privilege log. Moreover, neither of these documents were created in preparation of defending Zook against Keaton's claims.

Documents 62-63 may be work product documents. These documents are emails from Ferguson to Hughes detailing the March 5, 2013 hearing before the Magistrate Judge and that the Disciplinary Commission was invited to file a document setting forth its position. Arguably, these documents were created during and in defense of Keaton's claims against Zook; however, the work product protection was waived when Ferguson provided these communications to Hughes. [*See infra*.]

### 4. Waiver of the Work Product Doctrine and the Common Interest Doctrine.

Keaton has argued that even if the Objected-to Documents were protected from disclosure by the work product doctrine, that protection was waived when the documents were

shared with third parties – the attorneys for the Indiana Disciplinary Commission.   Zook responds that she and the Disciplinary Commission have a common interest which protects work product despite that these documents were shared with (and directed to) the Disciplinary Commission.

The work product protection (like the attorney-client privilege) can be waived.  "Perhaps the most common instance of waiver is where an otherwise privileged communication is disclosed to a third party outside the scope of the privilege."  *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 441 (S.D. Ind. 2004) (citing *Beneficial Franchise Co., Inc. v. Bank One, N.A.,* 205 F.R.D. 212,  215 (N.D. Ill. 2001)). " However, 'disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information.'"  *Id.* at 441-42 (citing 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice and Procedure § 2024 (2d ed.1994).  *See also Vardon Golf Co., Inc. v. Karsten Mfg. Corp.,* 213 F.R.D. 528, 534 (N.D.Ill.2003) (waiver occurs when work product is disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information); *Tronitech, Inc. v. NCR Corp.,* 108 F.R.D. 655, 657 (S.D.Ind.1985) ("The work product doctrine . . . is intended only to prevent disclosure to the opposing counsel and his client, so it is not ordinarily waived by disclosure to third parties.")).  "[W]aiver would not occur if disclosure of otherwise protected work product was made to a third party with a common legal interest *or* would not otherwise substantially increase the ability of an adversary to gain the information."  *Id.* at 442 (emphasis in original).

Neither party thoroughly explores whether Zook's communications with the Disciplinary Commission – if work product protected – were made in such a way as to "substantially increase the ability of an adversary to gain the information."  However, Zook admits that information she

provided to the Disciplinary Commission increases Keaton's ability to gain that information if it is exculpatory to Keaton.  [Dkt. 112 at 3.]  The parties have demonstrated through their briefing that each holds a drastically different interpretation of the term "exculpatory."  The Disciplinary Commission argues that a disciplinary proceeding is not one in which Keaton and the Disciplinary Commission are adverse per se, as Zook suggests.  The Disciplinary Commission argues that "[s]uch proceedings are not lawsuits between parties litigant but rather are in the nature of an inquest or inquiry as to the conduct of the respondent."  [Dkt. 114 at 3, n.3.]  (citing *Ex parte Wall*, 107 U.S. 265 (1882); *Matter of Roberts*, 442 N.E.2d 986 (Ind. 1983)).[7]  As a result, the sharing of information between the Disciplinary Commission and Zook may increase the ability for Keaton to gain access to the information.

"The common interest doctrine is not an independent source of confidentiality. Rather, it simply extends the protection afforded by other doctrines, such as the attorney/client privilege and the work product rule."  *BASF Aktiengesellschaft*, 224 F.R.D. at 440 (citing *McNally Tunneling Corp. v. City of Evanston,* 2001 WL 1246630, at *2 (N.D.Ill.2001)).  The parties must have a shared **legal interest** for the common interest doctrine to apply.  *Id*. at 442.  Keaton argues that Zook claims she only has a common interest in the same set of facts as the Disciplinary Commission and not that Zook and the Disciplinary Commission share a common **legal** interest.

Zook has no legal interest in the outcome of the Disciplinary Commission case against Keaton.  Likewise, the Disciplinary Commission has no legal interest in the outcome of Keaton's civil complaint against Zook.  "A common *legal* interest exists where the parties asserting the

---

[7] The Disciplinary Commission also argues that this Court is not the proper forum for Keaton to seek Disciplinary Commission documents or communications, but that Keaton's request should be "heard and determined" in the disciplinary proceeding.  [Dkt. 114 at ¶ 10.]  Yet, Keaton has moved in this case before this Court to compel communications in the possession of one of the defendants.  As a result, this Court is a proper venue for adjudication of this dispute.

privilege were co-parties to litigation or reasonably believed that they could be made a party to litigation." *In re Megan-Racine Assocs., Inc.*, 189 B.R. 562, 573 (Bankr. N.D.N.Y. 1995) (emphasis in original and citation omitted). The parties have expressed no concern that the Disciplinary Commission could be made a defendant to the Keaton/Zook case and likewise, the parties have not indicated that Zook could be made a defendant to the Disciplinary Commission complaint against Keaton. As a result, no common legal interest exists between Zook and the Disciplinary Commission that would protect documents exchanged between them that are work product.

Because no common legal interest exists between Zook and the Disciplinary Commission, the act of sharing allegedly protected documents waived any protection the documents and communications may have had.[8]

### 5.    The Confidentiality of Disciplinary Commission Investigations.

Keaton is not seeking the files of the Disciplinary Commission with his Motion to Compel. Keaton seeks those communications that Zook and/or her lawyer have had with the Disciplinary Commission that are in **Zook's** possession. The Disciplinary Commission argues that these documents are protected by Section 22(a) of Indiana Admission and Discipline Rule 23. That section states:

**Section 22. Public Disclosure**

(a)   Except as provided in Section 22(b), after a verified complaint has been filed with the Court, all proceedings, except for adjudicative deliberations, and all papers filed of record with the Clerk shall be open and available to the public. Proceedings and papers that relate to matters that have not resulted in the filing of a verified complaint shall not be open and available to the public. **Investigative**

---

[8] In contrast, correspondence between Zook and the other defendants (or the parties' respective lawyers) in this case would fall under the common interest doctrine because they all share a common legal interest in the outcome of the claims asserted by Keaton. Consequently, Keaton is not entitled to a privilege log of communications between Zook's lawyers and lawyers for the other defendants in this case. To require such would enlighten Keaton as to the frequency and subject of the defendants' communications and joint defense efforts, if any, which is information to which Keaton is not entitled.

> **reports and other work product of the Executive Secretary or his or her agents, and statements of circumstances conditionally agreeing to discipline submitted pursuant to Section 11(c), shall be confidential and not open to public inspection.**

[Indiana Admission and Discipline Rule 23, § 22.]  The Court does not find this section relevant to communications that the Disciplinary Commission had, in writing, with a lawyer for a potential witness.  This section is meant to protect confidential drafts, notes, and research of the Executive Secretary and his or her agents, not open written communication that the attorneys for the Disciplinary Commission have with a potential witness or her lawyer.

Keaton's requests would be different if they were directed at the Disciplinary Commission.  Here, Keaton only seeks documents and correspondence that the Disciplinary Commission knowingly and willingly provided to Zook and/or her counsel.  As a result, the Court finds Section 22(a) of Indiana Admission and Discipline Rule 23 inapplicable to Keaton's requests.

Because no privilege exists for the documents contained in Zook's privilege log related to communications between Zook (or her lawyers) and lawyers for the Disciplinary Commission, and even if any such privilege or protection exists, the same was waived by sharing it with the Disciplinary Commission, the Court overrules Zook's objections to production of all documents on her privilege log [Dkt. 107] and ORDERS that the documents identified therein be produced within seven (7) days of the date of this Order.

### C. Disclosure of Zook's Mental Health Providers and Documents Related Thereto.

Keaton has sought both the identity of Zook's mental health providers, as well as executed waivers so that Zook's providers will produce their files related to Zook.  Zook objected to the disclosure of this information and the execution of waivers, arguing that this information is irrelevant and that the psychotherapist-patient privilege protects the compelled

disclosure of these records.[9]   The Court finds that Zook has not opened the door to her mental health records and that the federal psychotherapist privilege protects the compelled disclosure of Zook's mental health records.

The Seventh Circuit has recognized a privilege for communications exchanged between a psychotherapist and her patient.   "Reason tells us that psychotherapists and patients share a unique relationship, in which the patient's ability to communicate freely without the fear of public disclosure is the key to successful treatment."   *Jaffee v. Redmond*, 51 F.3d 1346, 1355-56 (7th Cir. 1995) *aff'd*, 518 U.S. 1, (1996).   The Seventh Circuit has held that "we recognize the existence of a psychotherapist/patient privilege under Rule 501 of the Federal Rules of Evidence. However, we also note that the privilege we recognize in a case of this nature requires an assessment of whether, in the interests of justice, the evidentiary need for the disclosure of the contents of a patient's counseling sessions outweighs that patient's privacy interests."   *Id.* at 1357.   "Accordingly, we will determine the appropriate scope of the privilege 'by balancing the interests protected by shielding the evidence sought with those advanced by disclosure.'"   *Id.* (citation omitted).

Keaton has brought this case against Zook and the other defendants, alleging that the defendants conspired to falsely arrest and prosecute Keaton and violate his Fourth, Fourteenth, and First Amendment rights.   [*See generally* Dkt. 7 (First Am. Compl.).]   Generally speaking, Zook's mental health records are irrelevant to Keaton's claims that Zook conspired with law

---

[9] Zook initially objected to Keaton's requests on the basis of the Indiana physician-patient privilege and then the Indiana psychotherapist-patient privilege; however, in a case in which federal jurisdiction is based on a federal question (as opposed to diversity of citizenship of the parties), federal privilege law applies, not state.  *See* Fed. R. Evid. 501; *In re Pebsworth*, 705 F.2d 261, 262 (7th Cir. 1983) (citation omitted) ("We note at the outset that Rule 501 of the Federal Rules of Evidence provides that the privilege of a witness in non-diversity cases 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.' Thus the contours and exceptions of such privileges are clearly a matter of federal common law; state-created principles of privilege do not control.").  The substance of Zook's objection was timely made despite her citation to the incorrect authority.  As a result, the Court does not find that Zook waived the psychotherapist-patient privilege by citing the incorrect authority in her discovery responses.

enforcement to have Keaton falsely arrested and prosecuted for stalking.  Keaton claims that

Zook's mental health records are relevant because they may lead to the discovery of admissible

evidence regarding whether Defendant Hannum was reasonable in relying on Zook's statements

regarding Keaton's alleged stalking of Zook.  [Dkt. 79 at 25, n.11.]  Keaton argues that he

informed Hannum about Zook's history of "serious mental illness, including false stalking

allegations" but that Hannum did not sufficiently investigate Keaton's concerns and did not so

inform defendant Dakich or the probable cause judge.  Zook responds that, even if Zook had lied

to Hannum about Keaton's alleged stalking, Hannum cannot be held liable.   "[W]hen a

policemen arrests a person based on information he/she has received from some person, usually a

putative victim or eyewitness, whom it seems reasonable to believe is telling the truth and which

information, if true, would justify an arrest, the policeman has probable cause and cannot be held

liable for a violation of the Constitution merely because later it turns out the witness was not

right or was not telling the truth."  *Hollingsworth v. City of Crawfordsville*, Case No. IP 01-1851

C M/S, 2003 WL 21180437, at *3 (S.D. Ind. Mar. 28, 2003) (citing *Holdeman v. Consolidated*

*Rail Corp.,* 649 F. Supp. 1188, 1199 (N.D.Ind.1986) *aff'd,* 840 F.2d 20 (7th Cir.1988)).

Consequently, Zook's mental records will not tend to prove whether it was "reasonable [for

Hannum] to believe" that Zook was telling the truth, as presumably, Hannum did not have access

to Zook's mental health records at the time he relied on Zook's statements that lead to Keaton's

arrest.[10]

---

[10] Keaton alleges that he informed Hannum of Zook's "history of serious mental illness" and that Hannum should have investigated further and disclosed to defendant Dakich and the probable cause judge facts about Zook's mental health.  [Dkt. 79 at 25, n.11.]  Again, whether Hannum investigated further or not and whether Hannum should have revealed to others what Keaton told him do not make Zook's mental health records relevant.  "[P]olice need not investigate every potentially exculpatory detail.  Once there is probable cause, pre-arrest investigation may cease." *Nelson v. Vill. of Lisle, Ill.*, 437 F. App'x 490, 494 (7th Cir. 2011).  Moreover, "[a]llegations of negligence or gross negligence are insufficient to state a claim under 42 U.S.C. § 1983." *Anton v. Sheriff of DuPage Cnty., Ill.*, 47 F. Supp. 2d 993, 999 (N.D. Ill. 1999) (citation omitted).  Consequently, whether Hannum acted negligently in failing to

In considering the factual situation of this dispute, the Court finds that the psychotherapist privilege protects the compelled disclosure of Zook's mental health records. Zook has not yet interjected her mental health records into this case and she should be afforded the protection of communicating confidentially with her mental health providers without fear of disclosure of those communications.  Certainly, however, if Zook interjects her mental health status into the litigation or opens the door to discovery about her mental health, Keaton may be entitled to discover those records.  *See Doe v. Oberweis Dairy*, 456 F.3d 704, 718 (7th Cir. 2006) ("If a plaintiff by seeking damages for emotional distress places his or her psychological state in issue, the defendant is entitled to discover any records of that state.") (citations omitted).

The psychotherapist-patient privilege arguably does not outright protect the disclosure of the identity of Zook's mental health providers.  *See In re Zuniga*, 714 F.2d 632, 639 (6th Cir. 1983) (noting that with respect to the identity of the patients, the dates on which they were treated and the length of the treatment on each date, with respect to the attorney-client or physician-patient privilege, "these facts do not generally fall within the privilege").  However, "[j]ust as the recognition of privileges must be undertaken on a case-by-case basis, so too must the scope of the privilege be considered."  *Id.* (citing *Upjohn Co. v. United States,* 449 U.S. 383, 396-97 (1981)).  Because the Court finds Zook's mental health records irrelevant at this time, no legitimate discovery purpose can be furthered by ordering the disclosure of the identity of Zook's mental health providers.  Keaton will not be entitled to serve non-party discovery on these providers given the Court's relevancy finding.  As a result, in this case and under these circumstances, the Court finds that the identity of Zook's mental health providers is irrelevant need not be disclosed.  Although it appears that Zook may have disclosed the name of at least

---

investigate Keaton's claims that Zook had a "history of serious mental illness" are irrelevant to Keaton's § 1983 claim against Hannum and Keaton is still not entitled to Zook's mental health records.

one of her mental health providers to Keaton [*see* Dkt. 79 at 26 (regarding Dr. Spencer)] and thus waived any protection of the identity of that mental health provider, it is **Keaton** to whom she made the disclosure.  As a result, no further disclosure is required.

Consequently, the Court DENIES Keaton's motion to compel Zook to disclose the name of her mental health care providers.  The Court further DENIES Keaton's motion to compel Zook to execute waivers to procure her mental health care records.

>    **D.**     **Zook Emails in Native Format.**

The Court ruled *supra* that Zook need not reproduce previously-produced emails in .pst or native format when those emails have been produced in a .pdf.  As a result, the Court declines Keaton's request to issue a blanket ruling that Zook produce all of her emails in a native format. Keaton's motion to compel Zook to produce email correspondence in native format is DENIED.

In his motion to compel, Keaton requested that Zook produce her emails in a non-nested format.  Zook responded in her opposition brief that "since the filing of this Motion, Zook has produced all nested emails in a non-nested format."  [Dkt. 92 at 14.]  As a result, Keaton's request is now MOOT.

**III.**    **Conclusion**

The Court **GRANTS IN PART** and **DENIES IN PART** Keaton's Motion to Compel. Specifically, the Court **DENIES** Keaton's request that Zook produce all of her archived emails in a .pst or native format.  The Court **ORDERS** Zook to submit a certification with the Court under the caption for this case and signed by Christine Zook, personally, in the following format: "The undersigned hereby certifies, pursuant to the penalties for perjury, that I have produced to Plaintiff in this matter all documents and things in my custody or control that are responsive to

Plaintiff's First Set of Requests for Production of Documents."  Zook shall submit the foregoing certification within fourteen (14) days of the date of this Order.

The Court finds that no privilege exists for the documents contained in Zook's privilege log related to communications between Zook (or her lawyers) and lawyers for the Disciplinary Commission, and even if any such privilege or protection exists, the same was waived by sharing it with the Disciplinary Commission.  Thus, the Court overrules Zook's objections to production of all documents on her privilege log [Dkt. 107] and **ORDERS** that the documents identified therein be produced within seven (7) days of the date of this Order.

The Court **DENIES** Keaton's motion to compel Zook to disclose the name of her mental health care providers.  The Court further **DENIES** Keaton's motion to compel Zook to execute waivers to procure her mental health care records.

The Court **DENIES** Keaton's motion to compel Zook to produce email correspondence in native format and the Court finds that Keaton's request that Zook be compelled to produce her emails in a non-nested format is **MOOT**.

Date:  04/29/2013

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

MARK  KEATON
PO BOX 11208
Ft. Wayne, IN 46856

David L. Ferguson
FERGUSON & FERGUSON
dlf@ferglaw.com

Kate E. Shelby
INDIANA ATTORNEY GENERAL
kate.shelby@atg.in.gov

David B. Hughes
INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
dbhughes11@att.net

Don R. Hostetler
OFFICE OF THE ATTORNEY GENERAL
donald.hostetler@atg.in.gov

James R. A. Dawson
TAFT STETTINIUS & HOLLISTER LLP
jdawson@taftlaw.com

Daniel Mark Witte
TRAVELERS STAFF COUNSEL OFFICE
dwitte@travelers.com